NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-801

COMMONWEALTH

vs.

RANDY S. WHITE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bifurcated jury-waived trial in the District Court, the defendant, Randy S. White, was found guilty of operating a motor vehicle while under the influence (OUI) of a narcotic drug, fourth offense, in violation of G. L. c. 90, § 24 (1) (a) (1), and OUI with a license that had been suspended for OUI, in violation of G. L. c. 90, § 23. On appeal, he argues that the Commonwealth failed to prove beyond a reasonable doubt that he was under the influence of a narcotic drug, that the judge improperly allowed a witness to testify as an expert, that the defendant did not voluntarily and intelligently waive his right to a jury trial, that the judge did not conduct a jury waiver colloquy before the subsequent offender portion of the

trial, and that the admission of certain documentary evidence violated his constitutional right to confront witnesses.  We affirm.

Background.  On January 15, 2019, emergency personnel were dispatched to Chestnut Street in Lynn for a medical emergency. The fire department arrived on the scene first, followed moments later by the police.  At the scene, they found the defendant seated in the driver's seat of a car "slumped behind the wheel." The car was stopped on the wrong side of the street, blocking traffic, with the engine running.  There was no damage to the car and it did not appear to have been in an accident. Lieutenant Matthew Reddy, a twenty-five-year veteran of the Lynn fire department, conducted an initial medical assessment of the defendant.  He noted that the defendant's eyes were "pinpoint" and that he was in respiratory distress.[1]  Based on these observations, which Reddy believed were symptoms of a potential opiate overdose, Reddy administered Narcan to the defendant. After receiving multiple doses of Narcan, the defendant eventually regained consciousness and was taken to the hospital.

---

[1] Reddy testified that he "could hear and notice the you know, agonal breathing and the snores.  It goes -- snoring respiration, you can tell when their breathing drops are so long, they start to snore.  It's a common sign of anyone that's in that type of respiratory distress."

Discussion. 1. Evidence of the defendant's ingestion of opiates. In reviewing the denial of a motion for a required finding of not guilty, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). Here, the Commonwealth was required to prove "that the defendant (1) physically operated a vehicle; (2) on a public way; (3) while under the influence of a narcotic drug." Commonwealth v. Bouley, 93 Mass. App. Ct. 709, 712 (2018). The defendant contests only the third element. It was thus incumbent on the Commonwealth to show that the use of a narcotic drug resulted in an "impairment, to any degree, of [the defendant's] ability to safely perform the activity in question." Commonwealth v. Veronneau, 90 Mass. App. Ct. 477, 479 (2016).

The defendant argues that the Commonwealth did not meet its burden of proof because it failed to "present evidence that the unidentified opiate was a narcotic." As relevant here, a "narcotic drug" is defined as "Opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate," including chemical equivalents. G. L. c. 94C, § 1. The defendant relies on cases such as Commonwealth v. Green, 408

3

Mass. 48 (1990), and Commonwealth v. Ferola, 72 Mass. App. Ct. 170 (2008), in which the Commonwealth presented evidence that the defendant had ingested a specific drug but failed to present evidence that the specific drug qualified as an opiate under § 1. These cases are inapposite, however, because the Commonwealth presented direct evidence that the defendant was under the influence of an opiate and opiates are, by definition, narcotic drugs. See G. L. c. 94C, § 1. See also Green, supra at 50 & n.3 (evidence would have been sufficient if substance at issue, codeine, had been included within definition of "narcotic drug").

"[T]he element of ingestion may be proved by circumstantial evidence," provided that the evidence and the inferences drawn therefrom are "of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." Commonwealth v. Reynolds, 67 Mass. App. Ct. 215, 218 (2006), quoting Latimore, 378 Mass. at 677. Reddy, a certified emergency medical technician (EMT) with twenty-five years of experience who regularly administered Narcan, testified that the defendant exhibited the classic symptoms of an opiate overdose. The defendant was resuscitated only after receiving several doses of Narcan, which Reddy stated would have had no effect on someone who was not suffering from an opiate overdose. From this evidence, the judge could rationally infer that the

4

defendant had ingested an opiate or opiates.  See Bouley, 93 Mass. App. Ct. at 712.  To the extent it is possible that other medical conditions may have caused the defendant to lose consciousness, the Latimore standard does not require the Commonwealth to rule out every "reasonable hypothesis of innocence" (citation omitted).  Commonwealth v. Merola, 405 Mass. 529, 533 (1989).  Because the evidence was sufficient to prove that the defendant had ingested a narcotic drug, it was unnecessary for the Commonwealth to corroborate this evidence with an admission from the defendant or a notation in his medical records.  "The issue is not the comparative strength of the evidence [to other like cases], but whether the evidence here was sufficient to support a finding of [guilt beyond a reasonable doubt]."  Commonwealth v. Gentile, 437 Mass. 569, 576 (2002).

The defendant also argues that the Commonwealth failed to connect his ingestion of a narcotic drug to the defendant's alleged impairment.  We disagree.  In addition to the evidence that the defendant had ingested opiates, the Commonwealth presented evidence that the defendant was found "slumped behind the wheel" of the driver's seat of a vehicle, with the engine running, stopped on the wrong side of the street and blocking traffic.  Accordingly, the judge could reasonably infer that the defendant's opiate use impaired his ability to operate the car

5

safely.  See Veronneau, 90 Mass. App. Ct. at 479.  The evidence of the defendant's guilt was sufficient.

2.  Admissibility of expert testimony.  The defendant argues that the judge abused her discretion by allowing Reddy to offer his opinion that the defendant was showing symptoms of an opiate overdose and that Narcan is used exclusively for treating opiate overdoses and would have no effect on other conditions. The defendant argues for the first time on appeal that Reddy's testimony failed to meet the five foundational requirements for expert testimony.[2]  See Commonwealth v. Barbosa, 457 Mass. 773, 783 (2010), cert. denied, 563 U.S. 990 (2011); Mass. G. Evid. § 702 (2025).  Whether we review under the substantial risk of a miscarriage of justice standard or for prejudicial error makes

_____

[2] In pretrial discussions, trial counsel objected to Reddy testifying as an expert primarily because of lack of notice.  On appeal, the defendant did not argue lack of notice in his principal brief, and we need not address issues raised for the first time in a reply brief.  See Commonwealth v. Garcia, 94 Mass. App. Ct. 91, 104 (2018); Mass. R. A. P. 16 (c), as appearing in 481 Mass. 1628 (2019).  Defense counsel also voiced objection to Reddy "giving conclusions and opinions," but the judge instructed counsel to make his objections during the course of Reddy's testimony and stated she would make rulings "as we hear the testimony."  During Reddy's testimony, counsel objected only once, when Reddy testified that the defendant "was under some sort of opiate."  The judge instructed the prosecutor to rephrase the question, and defense counsel did not object when Reddy testified that he chose to administer Narcan because the defendant's symptoms "showed to me that this was a potential opiate overdose."

6

no difference, however, as the judge did not abuse her discretion in admitting Reddy's testimony.

"[D]eterminations as to the admissibility of evidence lie 'within the sound discretion of the trial judge,'" Commonwealth v. Bins, 465 Mass. 348, 364 (2013), quoting Commonwealth v. Jones, 464 Mass. 16, 19-20 (2012), an abuse of which "occurs only where the judge makes '"a clear error of judgment in weighing" the factors relevant to the decision . . . , such that the decision falls outside the range of reasonable alternatives.'" Commonwealth v. Keown, 478 Mass. 232, 242 (2017), cert. denied, 583 U.S. 1139 (2018), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

"The judge is not required to hold a voir dire before qualifying an expert, and the judge's determination may be inferred from the record" (citation omitted). Commonwealth v. Calderon, 65 Mass. App. Ct. 590, 593 (2006). It is not necessary for a judge to expressly qualify an EMT as an expert, "[a] judge may implicitly qualify an experienced, certified EMT as an expert." Bouley, 93 Mass. App. Ct. at 714, quoting Commonwealth v. Ruiz, 442 Mass. 826, 834 (2004).[3] "The crucial

---

[3] Likewise, to the extent the defendant suggests that the judge was required to conduct a Daubert-Lanigan hearing on the reliability of Reddy's methodology (personal observations), because the defendant did not request a Daubert-Lanigan hearing prior to trial, the issue is waived. See Commonwealth v. Wilkerson, 486 Mass. 159, 172 (2020).

issue, in determining whether a witness is qualified to give an expert opinion, is whether the witness has sufficient education, training, experience and familiarity with the subject matter of the testimony" (quotations and citation omitted). Commonwealth v. Richardson, 423 Mass. 180, 183 (1996). Reddy was a certified EMT with twenty-four and one-half years of experience. He had received extensive medical training, including how to treat opiate overdoses with Narcan, and regularly responded to medical calls where individuals were suspected of having overdosed on opiates.

Furthermore, Reddy's testimony was not unfairly prejudicial to the defendant as there was no danger that the judge would forgo an "independent analysis of the facts and bow too readily to the opinion of an expert or otherwise influential witness." Bouley, 93 Mass. App. Ct. at 714, quoting Commonwealth v. Canty, 466 Mass. 535, 543 (2013). "[J]udges in jury-waived trials are presumed to know and correctly apply the law," Commonwealth v. Watkins, 63 Mass. App. Ct. 69, 75 (2005), and we assume that the judge gave the appropriate weight to Reddy's testimony and parsed the evidence to "rely only on that which [was] admissible."[4] Commonwealth v. Collado, 426 Mass. 675, 678-679

_____

[4] For this same reason, we conclude that there was no error in the judge's decision to allow Reddy to testify as both a percipient and expert witness. See Commonwealth v. Lowery, 487

8

(1998).  Accordingly, the judge acted within her discretion in implicitly qualifying Reddy as an expert and allowing him to offer an opinion about the likely cause of the defendant's overdose and the effects of Narcan.  See Bouley, 93 Mass. App. Ct. at 714.  See also Commonwealth v. Mahoney, 406 Mass. 843, 852 (1990) ("A judge has wide discretion in qualifying a witness to offer an expert opinion on a particular question, and his determination will not be upset on appeal if any reasonable basis appears for it" [citation omitted]).

3.  Sufficiency of the first jury waiver colloquy.  The defendant argues that the jury waiver colloquy before the trial on the underlying offenses failed to establish the voluntariness and intelligence of his waiver because the judge failed to inquire if the defendant had conferred with counsel, failed to inquire whether he was impaired, and coerced the defendant to opt for a bench trial.  "[T]o effectively waive his right to a jury trial, a defendant must sign a written waiver form pursuant to G. L. c. 263, § 6, and the trial judge must conduct a colloquy to assure himself that the defendant's waiver was voluntary, knowing, and intelligent" (footnote omitted).  Commonwealth v. Dussault, 71 Mass. App. Ct. 542, 547 (2008).  No

_____

Mass. 851, 871 (2021) ("A percipient . . . witness may also testify as an expert witness, though care should be taken in presenting such expert testimony").

9

"rigid pattern" must be followed. Commonwealth v. Abreu, 391 Mass. 777, 779 (1984).

The judge began the colloquy by confirming that both the defendant and his counsel had signed the written waiver form. She asked the defendant his name and age, inquired into his level of education, and then provided the "compendious reminder" suggested in Ciummei v. Commonwealth, 378 Mass. 504, 510 (1979), of what a jury trial entails. She asked the defendant if he understood the rights he was giving up and if he was doing so freely, willingly, and voluntarily; he responded affirmatively. The judge concluded the colloquy by asking defense counsel and the prosecutor if there were any more inquiries they wished her to make.

The record provides sufficient evidence that the defendant's waiver was voluntary and intelligent. The judge could infer that counsel had discussed the jury trial waiver with the defendant from the fact that both had signed the form; "it was not necessary for the judge specifically to inquire whether the defendant had discussed the waiver with his counsel." Commonwealth v. Hardy, 427 Mass. 379, 383-384 (1998). Nor was the colloquy deficient because the judge did not directly question the defendant about any mental illness, potential intoxication, or other medical condition that may have impaired his decision-making abilities. See Abreau, 391 Mass.

10

at 779 (omission of specific inquiries suggested in Ciummei "not enough to make the colloquy inadequate").  The judge was entitled to consider the defendant's demeanor during the colloquy to conclude that he was not impaired.  See Hardy, supra at 383.  Significantly, the defendant does not claim that he was either impaired by mental illness or intoxicated at the time of trial.  See Commonwealth v. Onouha, 46 Mass. App. Ct. 904, 905 (1998).  Finally, the judge's statements regarding the availability of jury trials, which had been suspended during the COVID-19 pandemic and were just again restarting, were merely factual and not coercive.  Indeed, although the judge said she could not guarantee a jury trial by a certain date, her comments implied that jury trials would soon be available.[5]

4. Sufficiency of the second jury waiver colloquy.  The March 2, 2021, trial transcript is missing the jury waiver colloquy that was conducted prior to the subsequent offense portion of the trial.  Upon the Commonwealth's motion under Mass. R. A. P. 8 (e), as appearing in 481 Mass. 1611 (2019), the

---

[5] To the extent the defendant argues that the colloquy was deficient because the judge failed to include the word "constitutional" when explaining the right to a jury trial, the claim is made without reference to legal authority and does not rise to the level of appellate argument.  See Mass. R. A. P. 16 (a) (9) (A); Cameron v. Carelli, 39 Mass. App. Ct. 81, 85–86 (1995).  In any event, where the judge described the substance of the defendant's right to a jury trial in great detail, we see no reason why a further explanation of the source of that right is necessary for the waiver to be intelligently made.

judge reconstructed the record and found that she had conducted the colloquy and had accepted the defendant's waiver as knowing and voluntary. The judge followed the proper procedure and permissibly relied on her customary practices. See Commonwealth v. Quinones, 414 Mass. 423, 432 (1993); Commonwealth v. Flint, 81 Mass. App. Ct. 794, 800-802 (2012). Moreover, the record contains a written waiver signed by the defendant and his counsel on March 2. See Commonwealth v. Johnson, 79 Mass. App. Ct. 903, 904 (2011), quoting Commonwealth v. Osborne, 445 Mass. 776, 781 (2006) (written waiver "particularly meaningful because it 'create[s] a moment of pause and reflection on the part of the defendant that is concomitant with signing one's name to a formal declaration relinquishing that right'"). And tellingly, just before the missing part of the transcript, the judge stated, "There is a requirement that I do a separate colloquy with the defendant, a separate written waiver of jury, if he chooses to waive a jury. So I think we should take that up." Defense counsel agreed, but asked for a ten minute recess. "The judge's findings in reconstructing the record are supported by the evidence and not clearly erroneous." Flint, supra at 804. See also Commonwealth v. Aboulaz, 44 Mass. App. Ct. 144, 146 (1998) ("In reviewing the order allowing the Commonwealth's motion to correct the record, we are guided by the principle

12

that the decision of the trial judge under rule [8] [e] is usually conclusive" [quotation and citation omitted]).

5. Admission of documentary evidence. We agree with the defendant that the second paragraph of the affidavit from the Registrar of Motor Vehicles, authenticating the Registry of Motor Vehicle (RMV) records and stating that the defendant's license had not been reinstated, contained testimonial hearsay. However, the defendant was not prejudiced, because the judge did not rely on the Registrar's statement in finding that the defendant drove while his license was suspended and had not been reinstated. Rather, the judge stated that she relied exclusively on (1) a letter mailed on December 24, 2018, informing the defendant that his license would be suspended for 730 days because of prior OUIs, effective as of January 3, 2019 (twelve days before this incident occurred); (2) a certified court record dated December 21, 2018, showing an eight-year loss of license; and (3) conditions of probation, signed by the defendant that same day, which reflected an eight-year loss of license.

The defendant is incorrect, however, in asserting that the mailing confirmation records are testimonial hearsay. See Commonwealth v. Royal, 89 Mass. App. Ct. 168, 174 (2016). Nor did the admission of court records, such as the docket sheet, plea sheet, and probation conditions, which were created for

13

administrative purposes and not as a substitute for trial testimony, violate the rules against hearsay or the confrontation clause.  See <u>Commonwealth</u> v. <u>Ellis</u>, 79 Mass. App. Ct. 330, 332-333 (2011); <u>Commonwealth</u> v. <u>Weeks</u>, 77 Mass. App. Ct 1, 5-8 (2010); Mass. G. Evid. § 803(6)(A).[6]

<u>Judgments affirmed</u>.

By the Court (Massing,
  Henry & Hodgens, JJ.[7]),

*Paul Little*

Clerk

Entered:  August 15, 2025.

---

[6] The defendant's argument that the RMV documents were not properly authenticated is unsupported by legal authority or citations to the record and does not rise to the level of appellate argument.  In any event, nothing in the record suggests that the RMV documents on which the trial judge relied were not among the "annexed instrument(s)" duly authenticated by the Registrar's certification.  See <u>Commonwealth</u> v. <u>Shaw</u>, 105 Mass. App. Ct. 680, 684 (2025); G. L. c. 233, § 76.

[7] The panelists are listed in order of seniority.